

FILED

December 28, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

3:25 P.M.

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| ROYELLA BATES, | ) | Docket No. 2017-07-0188 |
| Employee, | ) | |
| v. | ) | State File No. 69518-2015 |
| US FARATHANE, | ) | |
| Self-Insured Employer. | ) | Judge Amber E. Luttrell |

## COMPENSATION HEARING ORDER

This matter came before the Court on December 1, 2017, for a Compensation Hearing. The central legal issues are whether Ms. Bates established by a preponderance of the evidence that her injury arose primarily out of and in the course and scope of her employment and whether she is entitled to permanent partial disability benefits and future medical benefits. A secondary issue is whether Ms. Bates is entitled to discretionary costs. For the reasons set forth below, the Court holds Ms. Bates met her burden of proof and awards her twelve-percent permanent partial disability to the body as a whole. Additionally, the Court grants her request for discretionary costs.

### History of Claim

Ms. Bates worked for US Farathane as a parts inspector. On July 23, 2015, Ms. Bates bent down to inspect a part, stood back up, and saw a tow motor coming towards her. She testified the tow motor hit some totes. The totes knocked her backwards into another machine, hitting the right side of her low back. She reported her injury and finished her shift. The next morning, she experienced soreness on the right side of her back extending down the back of her leg to her foot. She went to work, reported her symptoms, and requested medical treatment.

US Farathane initially accepted Ms. Bates' claim and provided her authorized treatment with primary care physicians and physical therapists at Physician's Quality Care (PQC), Drs. Michael Cobb and Timothy Sweo, orthopedic surgeons, and Dr. John Brophy, a neurosurgeon. Ms. Bates selected PQC and Dr. Brophy from panels provided

1

by US Farathane.[1] She later sought unauthorized treatment with Dr. Akin, a neurosurgeon, and an evaluation with Dr. Samuel Chung. The parties took the depositions of Dr. Cobb, Dr. Brophy, and Dr. Chung and introduced the following medical proof.

*Medical Treatment and Physicians' Testimony*

*a. Physicians' Quality Care*

Ms. Bates initially saw Dr. Inman the day after the injury. Dr. Inman documented her history of injury and noted she complained of back, neck, and right knee pain. She received conservative treatment with different physicians and therapists at PQC for those conditions. Her physical therapy records indicated she consistently complained of right-sided pain and parasthesia radiating into her posterior thigh. (Ex. 8.) At her last doctor's visit, Ms. Bates reported continued muscle pain and stiffness in her upper and lower back with pain radiating into her right buttock and posterior thigh. The physicians referred her to an orthopedic specialist for further treatment due to these complaints.

*b. Drs. Cobb and Sweo*

Ms. Bates presented to Dr. Cobb for her back, right knee, and neck complaints. Dr. Cobb examined her, reviewed her x-rays and diagnosed neck, low back and knee strains. He testified he found no serious injury and encouraged her to continue home exercises. (Ex. 4 at 15.) Ms. Bates returned for a follow-up visit and described widespread pain in the back of her chest running down her right thigh. Dr. Cobb testified he examined her lower extremities for signs of a back or nerve injury but found none. He released Ms. Bates at maximum medical improvement with no permanent impairment. *Id.* at 17-18.

Ms. Bates requested a second opinion, and US Farathane permitted her to see Dr. Timothy Sweo. She complained to Dr. Sweo of moderate to severe symptoms in her back radiating down her right leg. She further described decreased mobility and limping. On exam, Dr. Sweo noted markedly straight-leg raise pain on the right with weakness. He stated her "main problem continues to be some right-sided lower back pain with probable L3 or 4 sciatica on the right side. X-rays show degenerative change but also show calcification consistent with a posterior facet fracture possibly." (Ex. 10.) Dr. Sweo ordered a lumbar MRI and prescribed pain medication.

US Farathane sent Ms. Bates back to Dr. Cobb for the MRI and any further treatment. She again complained of low back and right leg pain. Dr. Cobb testified that her complaints were basically unchanged except she now described pain down her right

---

[1] The parties presented no proof to indicate Dr. Cobb was a panel-selected physician. However, the parties stipulated Dr. Cobb was an authorized treating physician.

leg and she previously described pain coming from the back of the chest down to the thigh. Dr. Cobb examined Ms. Bates' reflexes and motor function; they were normal. He stated she was "a little uncomfortable" on the right straight-leg raise test. Following the MRI, Dr. Cobb saw her one last time. He testified that leg pain could indicate a disc issue impinging on a nerve. *Id.* at 36. He reviewed her MRI films and concluded Ms. Bates had stenosis, which he stated was very common.[2] He noted the MRI indicated a disc protrusion and referred Ms. Bates to a neurosurgeon. Dr. Cobb diagnosed lumbar stenosis with aggravation and protruding disc. *Id.* at 26-27.

Dr. Cobb declined to give an opinion regarding medical causation. He testified he would defer to the neurosurgeon for an opinion concerning any anatomic change on Ms. Bates' MRI. He stated, "Disc protrusions can occur degeneratively, they can occur traumatically, and I'm testifying that I'm not the expert on that." *Id.* at 27.

### c. Dr. Brophy

Ms. Bates next saw Dr. Brophy for her back and right leg complaints. He took a detailed history of her injury and noted she stated her right lower extremity pain began within a week of her injury. (Ex. 5 at 10.) She denied any previous history of back problems requiring medical treatment. On exam, Ms. Bates' only abnormal finding was a positive right straight-leg raise test.

Dr. Brophy reviewed the MRI films and noted it "demonstrated a minimal degenerative L4-5 spondylolisthesis associated with hypertrophy of the facet joints as well as a small synovial cyst and foraminal far lateral herniated disc on the right." He further noted degenerative changes at multiple levels. (Ex. 5 at 12.) He diagnosed "lumbar radiculopathy secondary to degenerative L4-5 spondylosthesis associated with a small right synovial cyst and a foraminal far lateral disc herniation on the right at L4-5." *Id.* at 14. Dr. Brophy discussed treatment options, which included a selective right L4 nerve injection. If conservative measures failed, Dr. Brophy stated she would be a candidate for a decompression and fusion. Ms. Bates preferred the nerve root injection. Dr. Brophy testified her degenerative changes at L4-5 were "pretty bad" and she would probably require surgery at some point.

Regarding causation, Dr. Brophy noted in his record "her preexisting degenerative changes are the primary cause of her current radicular pain and, therefore, further treatment would be more appropriately handled through her personal insurance." US Farathane asked, "In your opinion the condition you diagnosed . . . was her employment, the incident she described to you at work, a greater than fifty percent cause of the condition you diagnosed considering all causes and factors?" Dr. Brophy responded, "[M]ore than fifty percent was related to the pre-existing degenerative changes."

---

[2] Dr. Cobb testified stenosis means narrowing of the canal where the nerves exit. (Ex. 4 at 26.)

US Farathane questioned Dr. Brophy further regarding the relationship between the disc herniation and the timing of Ms. Bates' onset of leg pain. Dr. Brophy stated, "[W]e really never know when the disc herniation occurred. We only know when the leg pain began, and that's how we sort through the causation question; and the accuracy of the history is essential." *Id.* at 18. Counsel then told Dr. Brophy that Dr. Cobb stated Ms. Bates did not report her leg pain until six months following the accident and asked, "Assuming Dr. Cobb's history is accurate . . . would that make it more likely or less likely that there is any relationship between the ruptured disc found on the MRI and the July incident that Ms. Bates reported?" Dr. Brophy responded "less likely."

Dr. Brophy testified her condition qualified for a permanent impairment rating but declined to provide one based on his determination that "the causation question has been determined degenerative." *Id.* at 20.

On cross-examination, Dr. Brophy testified he had no reason to believe Ms. Bates had radiating leg pain before her accident. He confirmed Ms. Bates told him her leg pain began within a week of the accident. Ms. Bates' counsel asked, "If her leg symptoms occurred after her accident, it would make it more likely that the accident caused the disc rupture?" Dr. Brophy responded, "Well, whether it caused or aggravated, it's one of those two things."

### d. Dr. Chung

Ms. Bates later saw Dr. Chung for an independent medical evaluation. Following an exam, Dr. Chung diagnosed "residual from lower back injury causing multi-level disc rupture with ongoing right lumbar radiculopathy." He assigned a fifteen-percent permanent impairment to the body as a whole.

Regarding causation, Dr. Chung testified that,

[Ms. Bates] clearly had some degeneration in her back to begin with. However, when the incident occurred . . . that caused a traumatic effect of her lumbar spine and more likely than not, that was the evidence where she was found to have some spondylolisthesis or the slippage of the L4 and 5 lumbar spine on the MRI findings, . . . as well as persistent symptoms of that right lumbar radicular symptoms. They came about after she had this incident. So that's clearly a causation of her symptoms that came after.

He further testified to a reasonable degree of medical certainty that "fifty-one percent or more was caused by her work incident." (Ex. 3 at 13.)

Dr. Chung found it significant that Ms. Bates had no prior history of radiculopathy

4

or back problems. He stated if she had symptoms prior to the injury, it would be difficult to ascertain which came first. Moreover, he testified, "In this case, she has an event of injury, and then she has clear clinical symptoms that followed [the] path of that particular nerve root and radicular symptoms; . . . [and] MRI findings also points [sic] to the area where the clinical symptoms may be arising from." He concluded, "[T]he puzzle seems to fit in this case that points to. . . clear symptoms of lumbar radiculopathy on the right side, and that points to the . . . imaging findings as well." *Id.* at 16.

On cross-examination, Dr. Chung agreed the timing of the onset of Ms. Bates' radicular symptoms was important to his causation opinion. He agreed that if Ms. Bates did not report radicular symptoms until six months after the injury, it would be less likely that the injury caused it. *Id.* at 18-19. Counsel challenged Dr. Chung regarding his utilization of Class 3 for rating Ms. Bates, which requires disc herniation at multiple levels. Dr. Chung agreed the MRI only indicated a true disc herniation at one level: L4-5. *Id.* at 24. Counsel asked Dr. Chung, "if there's only a disc at one level with residual radiculopathy, based upon your findings in this case, the actual rating, it should be under column two."[3] Dr. Chung responded, "Yes." He further stated the rating would be twelve percent, which is the default rating under Class 2.

*Hearing Testimony*

*a. Ms. Bates*

Ms. Bates denied any prior injury to her back or leg and any symptoms in her back or leg before the work injury. She testified she did not miss work following her injury and continued working full-duty. However, she continued to experience pain in her back and leg and could not move as quickly as she did before the injury. Ms. Bates now works as a quality auditor at US Farathane, a less physically-demanding but higher-paying position. Ms. Bates stated she is not as active outside of work as she was before her injury.

As for the onset of her leg symptoms, Ms. Bates disputed Dr. Cobb's testimony that she did not report any leg pain to him initially. She maintained her leg symptoms began shortly after the injury and that she reported it to her treating providers.

Ms. Bates' sister, Vanilsa Bates, and father, Roger Stewart, testified that she is not as active as she was before the injury. Neither Ms. Bates' sister nor Mr. Stewart observed any problems with Ms. Bates' back before her work injury. Now, Mr. Stewart notices her "dragging her leg."

---

[3] The Court takes judicial notice of Table 17-4 of the AMA Guides Sixth Edition. Class 2 provides the range of ratings for a intervertebral disc herniation at a single level with medically-documented radiculopathy at the clinically appropriate level.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

At a Compensation Hearing, Ms. Bates must establish all elements of her claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2017).

### *Analysis*

US Farathane agreed that Ms. Bates had an incident identifiable by time and place of occurrence as required by Tennessee Code Annotated section 50-6-102(14)(A). It stipulated she properly reported the incident and it initially provided authorized treatment. The issue is whether Ms. Bates established by a preponderance of the evidence that her work incident contributed more than fifty percent in causing her disablement or need for additional medical treatment, considering all causes. Tenn. Code Ann. § 50-6-102(14)(B). To resolve this issue, the Court must weigh the competing causation opinions from Dr. Brophy and Dr. Chung. Ms. Bates selected Dr. Brophy from a panel; thus, his opinion is presumed correct, subject to rebuttal by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E). In analyzing the conflicting medical opinions, the Court may consider the experts' qualifications, the circumstances of their examination, the information available to them, and evaluation of that information through other experts. *Brees v. Escape Day Spa & Salon*, 2015 TN Wrk. Comp App. Bd. LEXIS 5, at *14 (Mar. 12, 2015).

Applying the first factor, the Court finds both physicians are board-certified in their respective fields. Dr. Brophy is a board-certified neurosurgeon, and Dr. Chung is board-certified in physical medicine and rehabilitation and independent medical evaluations. The Court finds both physicians are experienced in their respective fields and well-qualified to give causation opinions in workers' compensation claims.

Regarding the circumstances of the evaluation, the Court finds both Dr. Brophy and Dr. Chung saw Ms. Bates once only. Dr. Brophy thoroughly examined Ms. Bates and reviewed the MRI film and x-rays. He had her treatment records in his file but was uncertain when he reviewed them. The Court finds Dr. Chung also thoroughly examined Ms. Bates and reviewed her treatment records, MRI report, and x-rays. The circumstances of evaluation are likewise not determinative.

The Court turns to the physicians' testimony regarding causation, as well as the lay proof, to analyze whether Ms. Bates successfully rebutted the statutory presumption afforded Dr. Brophy causation opinion. The Court finds she did.

Dr. Brophy diagnosed lumbar radiculopathy for which he recommended additional

treatment. However, Dr. Brophy found Ms. Bates' MRI revealed degenerative changes and as a result concluded that her work injury did not contribute more than fifty percent in causing her radicular symptoms and need for treatment. Dr. Chung concluded that the work accident caused fifty-one percent or more of the trauma to her lumbar spine and resulting lumbar radiculopathy.

"When faced with conflicting medical testimony, the Court must use its discretion in accepting one expert opinion over another and, in so doing, may consider which opinion contains the more probable explanation." *Sanker v. Nacarato Trucks, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). Further, and of particular importance here, Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.,* 812 S.W.2d 278, 283 (Tenn. 1991).

The Court finds Dr. Chung offered the more probable explanation regarding causation of Ms. Bates' lumbar radiculopathy. While Dr. Chung may not have "couched his opinion in a rigid recitation of the statutory definition of injury," our Appeals Board has concluded that a physician need not use particular words or phrases included in the statute to establish the requisite medical proof to succeed at trial. "What is necessary, however, is sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in 50-6-102(14) are satisfied." *Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017).

The Court finds Dr. Chung's explanation fits with Ms. Bates' uncontroverted and credible testimony that she had no symptoms in her back or right leg before July 23, 2015, but after that date she suffered pain that radiated down her right leg for which she required treatment. Notably, Dr. Brophy also acknowledged the significance of the onset of leg pain to the causation analysis. He stated, "[W]e really never know when the disc herniation occurred. We only know when the leg pain began, and that's how we sort through the causation question." Ms. Bates' counsel asked Dr. Brophy, "[i]f her leg symptoms occurred after her accident, it would make it more likely that the accident caused the disc rupture?" He responded, "Well, whether it caused or aggravated, it's one of those two things."

Dr. Brophy's causation opinion is presumed correct subject to rebuttal by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-102(14)(E). However, the Court finds Dr. Chung's opinion rebuts Dr. Brophy's opinion based upon the above findings. US Farathane further challenged the accuracy of Ms. Bates' reported onset of leg pain. It argued, through Dr. Brophy's testimony, that Ms. Bates' lumbar radiculopathy was "less likely" to be related to her work injury because it contended she did not report any leg pain to Dr. Cobb until January 2016, six months after her work injury. It also pointed to PQC records and argued she only reported back, right knee, and

7

neck complaints to those providers. The Court disagrees with US Farathane's position.

The Court finds the medical records are replete with Ms. Bates' complaints of right leg and/or thigh pain or paresthesia. On July 29, six days following the injury, PQC's record noted her complaints of right hip/thigh pain. On neurological exam, the provider noted "tenderness/spasm- right thigh." PQC's physical therapy notes indicated she consistently reported radiating pain into her posterior and lateral right thigh. The therapist documented her leg complaints on August 19, 25, 27, and 28. The therapist noted Ms. Bates requested a MRI on August 28 because of her lack of improvement in her leg symptoms. At a follow-up visit to one of the PQC physicians on August 26, she described radiating pain down her right leg. While Dr. Cobb denied she reported radicular pain until January 2016, his note of October 29, 2015, indicated she reported pain in the back of her chest extending down into her right thigh. She later reported her radiating leg pain to Dr. Cobb, Dr. Sweo, and Dr. Brophy.

The Court finds the totality of the medical records support Ms. Bates' credible testimony regarding the onset of her leg complaints shortly following the injury. Thus, the Court finds Dr. Brophy's testimony − that any relationship between her herniated disc and work injury was "less likely" given a six-month delay in the onset of leg symptoms− was based on inaccurate facts. In other words, the facts do not support the argument that Ms. Bates' radicular symptoms began too late to have been caused by her work injury.

Accordingly, upon thorough consideration of the preponderance of the evidence, the Court holds Ms. Bates rebutted the presumption of correctness of Dr. Brophy's causation opinion.

*Extent of disability*

To determine the extent of Ms. Bates' permanent partial disability, the Court must consider the competing physicians' impairment opinions. The Court gives little weight to Dr. Cobb's opinion that Ms. Bates sustained no permanent impairment. Dr. Cobb saw Ms. Bates only twice before giving his impairment opinion. He later saw her two more times after her second opinion with Dr. Sweo, ordered a lumbar MRI, and referred her to a neurosurgeon for treatment of her back injury. He deferred to Dr. Brophy regarding Ms. Bates' back injury and causation. Dr. Cobb never saw Ms. Bates again following her visit with Dr. Brophy.

Dr. Brophy testified Ms. Bates' disc herniation with radiculopathy or her spondylosis qualified for impairment under the Sixth Edition of the AMA Guides, but he did not assign an impairment rating due to his negative causation opinion.

Dr. Chung assigned Ms. Bates a fifteen-percent impairment rating after placing her condition in Class 3 of Table 17-4, which requires disc herniation at multiple levels.

8

However, Dr. Chung agreed on cross-examination that the MRI only indicated a disc herniation at one level: L4-5. Counsel asked Dr. Chung, "if there's only a disc at one level with residual radiculopathy, based upon your findings in this case, the actual rating, it should be under column two."[4] Dr. Chung responded, "Yes." He further stated the rating would be twelve percent, which is the default rating under Class 2. The Court finds Dr. Chung correctly revised his impairment rating to twelve-percent impairment based on a single level disc herniation with residual radiculopathy. Based on Dr. Brophy's testimony that Ms. Bates' condition qualified for permanent impairment and Dr. Chung's testimony, the Court finds Ms. Bates sustained twelve-percent permanent impairment to the body as a whole from her work injury.

The Workers' Compensation Law provides that permanent partial disability is paid at sixty-six and two-thirds percent of the injured employee's average weekly wage for the period of compensation as determined by multiplying the employee's impairment rating by 450 weeks. Tenn. Code Ann. § 506-207(3)(A). Because Ms. Bates returned to employment at the same or greater wage during her initial compensation period, she is limited to these benefits and not entitled to any enhancement factors. It follows that Ms. Bates sustained twelve-percent permanent partial disability or a period of fifty-four weeks. At her stipulated compensation rate of $459.49, the Court concludes Ms. Bates is entitled to permanent partial disability benefits totaling $24,812.46.

*Future medical benefits*

Ms. Bates is entitled to lifetime future medical benefits made reasonably necessary by her L4-5 injury and resulting radiculopathy. Tenn. Code Ann. § 50-6-204(a)(1)(A). Dr. Brophy shall remain the authorized treating physician.

*Discretionary costs*

Ms. Bates filed a Motion to Assess Discretionary Costs. The Workers' Compensation Law allows the Court to award discretionary costs for these expenses as reasonable expert deposition fees. Tenn. Code Ann. § 50-6-239(c). Additionally, Tennessee Rule of Civil Procedure 54.04(2) also provides for the recovery of certain discretionary costs. *See also Garassino v Western Express* 2016 TN Wrk. Comp. App. Bd. LEXIS 82, at *12 (Nov. 7, 2016). Ms. Bates requested discretionary costs totaling $1,249.75 representing the following itemized costs:

1. Deposition fee of Dr. Samuel Chung        $750.00
2. Employee's deposition transcript          $167.00

---

[4] The Court takes judicial notice of Table 17-4 of the AMA Guides Sixth Edition. Class 2 provides the range of ratings for a intervertebral disc herniation at a single level with medically documented radiculopathy at the clinically appropriate level.

| 3. | Dr. Chung's deposition transcript | $179.75 |
| 4. | Dr. Cobb's deposition transcript | $ 78.00 |
| 5. | Dr. Brophy's deposition transcript | $ 75.00 |

Ms. Bates argued that these expenses are accurate, reasonable, and necessary in the preparation for trial and are recoverable costs under Tennessee Rules of Civil Procedure 54-02(2) and 59.01. The Court holds $1,249.75 are recoverable discretionary costs.

The Court further holds Ms. Bates' counsel is entitled to a reasonable attorney's fee of twenty-percent of her award.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Bates shall recover from US Farathane permanent partial disability benefits in the amount of $24,812.46.

2. Ms. Bates shall receive future medical benefits under the statute.

3. Ms. Bates is awarded a total amount of $1,249.75 for discretionary costs.

4. Ms. Bates' attorney is awarded a twenty-percent attorney's fee and any incurred expenses to be paid from Ms. Bates' award.

5. Absent an appeal of this order by either party, the order shall become final thirty days after issuance.

6. Costs of $150.00 are assessed against US Farathane under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016), to be paid within five days of this order becoming final.

7. US Farathane shall prepare and file a statistical data form within ten business days of the date of this order under Tennessee Code Annotated section 50-6-224.

**ENTERED this the 28th day of December, 2017.**

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

10

## APPENDIX

Stipulated Findings of Fact:
1. The date of injury was July 23, 2015.
2. Ms. Bates gave proper notice to US Farathane on July 23, 2015.
3. Ms. Bates is 53 years of age, a resident of Madison County, completed the 12th grade, and obtained a high school diploma or GED.
4. No temporary disability benefits are owed.
5. Ms. Bates returned to work for US Farathane, earning the same or greater wages as she was earning prior to the injury.
6. The compensation rate is $459.49.

Exhibits:
1. First Report of Work Injury or Illness
2. Panel of physicians-PQC (2a.); Panel of Physicians-Dr. Brophy (2b.)
3. Dr. Chung's deposition
4. Dr. Cobb's deposition
5. Dr. Brophy's deposition
6. Employee's Motion to Assess Discretionary Costs
7. Employee's Answers to Employer's Interrogatories and Request for Production of Documents
8. PQC medical records
9. Dr. Cobb's medical records
10. Dr. Sweo's medical records

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Scheduling Order
5. Petition for Benefit Determination (post-discovery)
6. Dispute Certification Notice (post-discovery)
7. Employee's Trial Brief
8. Employee's Notice of Proposed Witnesses and Exhibits
9. Employer's Trial Brief
10. Employer's Notice of Filing Depositions and Proposed Exhibits
11. Pre-Compensation Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 28th day of December, 2017.

| Name | Via Email | Service sent to: |
|------|-----------|------------------|
| David Hardee, Esq., Employee's Counsel | X | dhardee@hmdlaw1.com<br>kperry@hmdlaw1.com |
| John Burleson Esq., Employer's Counsel | X | jburleson@raineykizer.com<br>cjordan@raineykizer.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov